Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------x
JONATHAN PEMBERTON BEY,

                Plaintiff,

    - against -

VERIZON, INC.,

                Defendant.
------------------------------------------x

Case No. 110920-07

**NOTICE OF FILING
NOTICE OF REMOVAL**

**PLEASE TAKE NOTICE** that defendant "Verizon, Inc." ("Verizon") has, on **September 6, 2007**, filed a Notice of Removal, a copy of which is attached hereto, in the Office of the Clerk of the United States District Court, Southern District of New York, and that pursuant to 28 U.S.C. § 1446, there shall be no further proceedings by this Court unless and until the case is remanded therefrom.

New York, New York
September 6, 2007

                                        EPSTEIN BECKER & GREEN, P.C.

                                        By: _____
                                              Matthew T. Miklave
                                        250 Park Avenue
                                        New York, New York 10177
                                        (212) 351-4663
                                        Attorneys for Defendant

TO:   Clerk of the Court
        Supreme Court of the State of New York
        New York County
        60 Centre Street
        New York, New York 10007

        John DeMaio, Esq.
        Attorney for Plaintiff
        75 Maiden Lane, Suite 204
        New York, New York 10038

NY:2029086v3

NEW YORK
COUNTY CLERK'S OFFICE

SEP 0 7 2007

NOT COMPARED
WITH COPY FILE

Matthew T. Miklave (MTM-9981)
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4663
Attorneys for Defendant
Verizon, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JONATHAN PEMBERTON BEY,

       Plaintiff,

   - against -

VERIZON, INC.,

       Defendant.
------------------------------------------------------------x

**RECEIVED SEP 0 6 2007 U.S.D.C. S.D.N.Y. CASHIERS**

**JUDGE KAPLAN**

**07 CIV 7856**

NOTICE OF REMOVAL

## TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:

  Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant "Verizon, Inc." ("Verizon"), by its attorneys Epstein Becker & Green, P.C., respectfully removes this action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York. The grounds for removal are as follows:

### THE STATE COURT ACTION

  1. Plaintiff Jonathan Pemberton Bey ("plaintiff") commenced the current action against Verizon on August 9, 2007 by filing a Summons with Notice in the Supreme Court of the State of New York, County of New York (the "State Court Action"), and serving the Summons with Notice upon Verizon on August 10, 2007. A copy of the Summons with Notice is annexed as Exhibit A. These papers constitute all of the processes and pleadings to date.

NY:2028668v3

2. The State Court Action is removable from the New York State Supreme Court to this Court pursuant to 28 U.S.C. § 1441(a) and (c) because the Summons with Notice raises claims under the laws of the United States over which this Court has original jurisdiction under 28 U.S.C. §1331 and §1337.

## BASIS FOR REMOVAL

3. The State Court Action is a civil action that may be removed to this Court by Verizon based upon federal question jurisdiction. Specifically, plaintiff has asserted causes of action against Verizon alleging: (1) breach of contract, (2) negligence, (3) fraud, (4) willful tort, and (5) breach of employment contract, and seeks damages in the amount of $1,000,000. See Exhibit A. Defendant is informed and believes that it employed plaintiff until on or about January 13, 2007. While employed by Verizon, plaintiff's terms and conditions of employment were governed by the terms of a collective bargaining agreement between Verizon and the Communications Workers of America, AFL-CIO District One, 80 Pine Street, 37th Floor, New York, New York, 10005 ("CWA-Verizon Contract"). Defendant is informed and believes that the "contract" referenced in the State Court Action is the CWA-Verizon Contract Accordingly, the State Court Action relates to or concerns claims involving a collective bargaining agreement subject to the provisions of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 141 et seq. Those claims are completely preempted by Section 301 of the LMRA, 29 U.S.C. § 185.

4. Section 301 of the LMRA grants federal courts original jurisdiction over claims asserting the breach of collective bargaining agreements and state claims, including tort claims, requiring the interpretation of collective bargaining agreements. See, e.g., Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985); Salamea v. Macy's East, Inc., 426 F.Supp.2d 1496 (S.D.N.Y. 2006). Although plaintiff has not specifically pled a breach of the CWA-Verizon Contract in his Summons with Notice, the "complete preemption doctrine" "converts an ordinary state common-law complaint into one stating a federal claim." See, e.g., Monastra v. Nynex Corp., No. 99 Civ. 8917 (RCC), 2000 WL 1290596 *4 (S.D.N.Y. 2000) (attached hereto as "Exhibit B") citing Caterpillar, Inc. v. Williams, 482 U.S. 382, 394 (1987); see also Mirkin v. Cintas Corp., 538 F. Supp. 145 (E.D. Pa. 1982) ("Removal is proper where the real nature of the claim asserted in the complaint is federal, whether or not so characterized by plaintiff") (internal quotations omitted). This preemption confers federal question jurisdiction in this case, without regard to the amount in controversy, pursuant to 28 U.S.C. § 1331. Verizon is therefore entitled to remove the action pursuant to 28 U.S.C. § 1441.

5. Assuming, arguendo, that one or more of plaintiff's claims are determined not to be removable, the entire case may nevertheless be removed pursuant to 28 U.S.C. § 1441(c), because this Court has original jurisdiction over plaintiff's claim under Section 301 of the LMRA.

6. Even were the Court to conclude that plaintiff's "breach of contract" or "breach of employment contract" claims referenced some agreement other than the CWA-Verizon Contract, the State Court Action would nevertheless be removable under Section 301 of the LMRA as any determination regarding plaintiff's claims would require the Court to analyze and interpret the CWA-Verizon Contract. See Allis-Chalmers, 471 U.S. at 220; see also Gray

v. Grove Mfg., 971 F.Supp. 78 (E.D.N.Y. 1997) (tortious interference with contract claim preempted); Lugo v. Milford Mgmt. Corp., 956 F. Supp. 1120 (S.D.N.Y. 1997) (wrongful discharge claim preempted).

7. This Court has supplemental jurisdiction over plaintiff's state law and common law claims pursuant to 28 U.S.C. § 1367.

8. This Notice of Removal has been filed within the time provided by 28 U.S.C. § 1446(b) and the Federal Rules of Civil Procedure.

9. Verizon has not yet answered the Summons with Notice filed in this action, nor has the time to answer expired.

10. Upon the filing of this Notice, Verizon will give written notice to plaintiff's attorney and will file a copy of this Notice with the Office of the Clerk, Supreme Court of the State of New York, New York County, and will comply with all other procedural mandates consistent with this application for removal.

11. By filing this Notice, Verizon does not waive, and expressly reserves, any defenses which may be available to it.

WHEREFORE, Verizon respectfully removes the State Court Action now pending in the Supreme Court of the State of New York, County of New York.

Dated: New York, New York
      September 6, 2007

                                        EPSTEIN BECKER & GREEN, P.C.

                                        By: _____
                                             Matthew T. Miklave (MTM-9981)
                                        250 Park Avenue
                                        New York, New York 10177
                                        (212) 351-4663
                                        Attorneys for Defendant

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X

Jonathan Pemberton Bey,

                                          Plaintiff(s),

- against -

Verizon, Inc.,

                                         Defendant(s).

------------------------------------------------------------X

*Plaintiff designates New York County as the place of trial. The basis of the venue is the Defendant's business address*

07110920

**Summons with Notice**

*Plaintiff resides at 120-08 97th Ave, Richmond Hills, NY 111419*

*County of Queens*

*To the above named Defendant*

    ***You are hereby summoned*** to answer the Summons herein in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

*Dated,* May 24, 2007
*Defendant's address:*
c/o Verizon Network City

                                                    John DeMaio
                                                *Attorney For Plaintiff*
                                               75 Maiden Lane, Suite 204
                                               New York, NY 10038
                                               Tel (212) 405-2104
                                               Fax (646) 202-1439

*Notice: The nature of this action is breach of Contract, negligence, fraud, willful tort, breach of employment Contract*

*The relief sought is $1,000,000.*
    *Upon your failure to appear, judment will be taken against you by default for the sum of $1,000,000 with interest from May 24, 2007 and the costs of this action.*

NEW YORK
COUNTY CLERK'S OFFICE

AUG 0 9 2007

NOT COMPARED
WITH COPY FILE

Pemberton - Bey

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.

Jonathan Pemberton Bey,

                          Plaintiff(s)

-against-

Verizon, Inc.

                          Defendant(s)

## Summons with Notice

Action Not Based Upon A
Consumer Credit Transaction

John DeMaio
Attorney for Plaintiff

Office, Post Office Address and Tel. No.

75 Maiden Lane, Suite 204
New York, New York 10038
Tel: (212) 405-2104
Fax: (646) 202-1439

Exhibit B



Not Reported in F.Supp.2d                                                                                                    Page 1

Not Reported in F.Supp.2d, 2000 WL 1290596 (S.D.N.Y.), 165 L.R.R.M. (BNA) 2500, 141 Lab.Cas. P 10,818
(Cite as: Not Reported in F.Supp.2d)

C
Monastra v. NYNEX Corp.
S.D.N.Y.,2000.

United States District Court, S.D. New York.
Marie MONASTRA, Plaintiff,
v.
NYNEX CORPORATION, Thomas Sergi, Ernest Hoffman, Roddy Harrington, Michael Antonacci, and Dennis Le Duc, Defendants.
No. 99Civ.8917(RCC).

Sept. 12, 2000.

Opinion and Order

CASEY, J.

*1 Plaintiff, Marie Monastra, initiated this action in New York State Supreme Court, against her former employer, NYNEX Corporation ("NYNEX"), and five individual defendants, alleging employment discrimination, wrongful termination in breach of a collective bargaining agreement and outrageous and malicious treatment. Plaintiff asserts that she was involved in an incident where another NYNEX employee threatened her, and that as a result of this incident she became physically and mentally ill. She further contends that despite her requests for assistance, NYNEX and the individual defendants failed to address the situation, further contributing to her emotional distress. Plaintiff brought this action against the defendants for: i) failure to provide her with a medically justified leave of absence; ii) failure to accommodate her with a transfer to a different and safer location; iii) failure to take corrective action against the employee who threatened her; and iv) wrongfully terminating her in violation of the collective bargaining agreement between NYNEX and her union.

NYNEX removed the action to the United States District Court for the Southern District of New York and plaintiff has now moved to remand the action to state court. One of the individual defendants, Dennis Le Duc, has moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), dismissing the action against him. For the reasons set forth below, plaintiff's motion to remand is denied and defendant Le Duc's motion to dismiss the action as against him is granted.

I. BACKGROUND

Plaintiff commenced her employment with NYNEX on May 20, 1980 as a directory assistance operator. During her employment, plaintiff was a member of District One of the AFL-CIO Communications Workers of America Union, also known as CWA Local 1101 ("Local 1101"). NYNEX and Local 1101 maintain a collective bargaining agreement (the "Agreement") which governs the terms and conditions of employment for Local 1101 members. Section 10.01(1) of the Agreement specifically provides that:

[i]f an employee is to be discharged, he shall first be suspended for ten (10) calendar days. The Local Union shall be notified in writing immediately that the employee has been suspended prior to discharge. During the ten (10) day period, the Local Union may discuss the reasons for [NYNEX]'s action with the appropriate district level supervisor (or his alternate) and may protest the action.

(Affidavit of Joy D. Oberman, Exh. B.)

In or about May of 1996, plaintiff was employed as a Construction Coordinator at the NYNEX Garage, located at 2300 Randall Avenue, Bronx, New York (the "Randall Avenue facility"). As a Construction Coordinator, plaintiff's duties were primarily office related, involving the maintenance of employee time sheets and inventory records and other administrative tasks. On or about July 28, 1996, plaintiff alleges that she was threatened by a co-worker, Gerard Job. While the two were alone in the kitchen area, Job allegedly prevented plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 1290596 (S.D.N.Y.), 165 L.R.R.M. (BNA) 2500, 141 Lab.Cas. P 10,818
**(Cite as: Not Reported in F.Supp.2d)**

from leaving the kitchen and threatened her over rumors that she had informed someone that Job and another employee, Ruben Garcia, were stealing from the Randall Avenue facility. (Complaint at p. 4, ¶¶ 25-29.) Despite plaintiff's denial of the rumors, Job repeatedly told plaintiff that he "better not hear anything else or else!" (*Id.* at p. 4, ¶¶ 26, 29.) Plaintiff, upset and concerned for her safety, left work for the day immediately thereafter.

*2 Plaintiff maintains that she was in fear for her life and therefore, relayed the incident to Roy Sokolov, a retired NYNEX foreman, and to Pamela Jones, the director of the NYNEX Employee Assistance Program. The next day, on or about July 29, 1996, plaintiff further reported the incident to defendant Thomas Sergi, a former management-level NYNEX employee. Plaintiff alleges that Sergi informed her that he would " personally take care of the Job incident" and later directed her not to take further action. (Complaint at p. 6, ¶ 39.) Plaintiff also made follow-up requests to NYNEX management, requesting that the incident with Job be written up. Subsequently, plaintiff received indirect threats from Garcia as well.

Discouraged that NYNEX had not addressed the matter to her satisfaction, on or about November 13, 1996, plaintiff reported the incident to defendant Ernest Hoffman, Sergi's superior at the time. Then on November 14, 1996, plaintiff met with Sergi, defendant Roddy Harrington, a NYNEX control foreman, a third NYNEX employee and defendant Dennis Le Duc, a Local 1101 business agent, to discuss the incident. Plaintiff contends that the meeting was merely a pretense and that the atmosphere and tenor of the meeting only made her more fearful for her situation. She asserts that she was told not to discuss the incident with anyone else and informed by Le Duc "that they [didn't] like the idea of her telling anyone what goes on in the office area." (Complaint at pp. 8-9, ¶¶ 62-66.) Plaintiff subsequently contacted a confidential NYNEX hotline to report her situation. On or about November 22, 1996, she spoke with Kevin Houston of NYNEX Security regarding the Job incident. Plaintiff avers that she later applied for different positions within NYNEX, in order to transfer out from the Randall Avenue facility. Job has denied ever threatening plaintiff and NYNEX has not taken any disciplinary action against him.

After initially informing Sergi of the incident with Job, plaintiff became physically and emotionally ill. Thereafter, she sought medical treatment from both a psychiatrist, Dr. Grant Mitchell, and a psychotherapist and social worker, Laurie Orfe, on a continuing basis. (Complaint at p. 6, ¶ 46.) Plaintiff asserts that her condition worsened and was exacerbated by the failure of NYNEX and the individual defendants to resolve this matter concerning the Job incident. Eventually, due to her medical and emotional condition, plaintiff contends that she was unable to immediately return to work. Plaintiff further asserts that Dr. Mitchell and Ms. Orfe notified NYNEX that she had ben diagnosed with severe depression, anxiety and panic, and that she would require time off from work. (*Id.* at p. 10, ¶ 90.) By letter dated December 7, 1996, NYNEX notified plaintiff that she would have to provide medical justification for her absence from work. (*Id.* at p. 10, ¶ 92.)

In or about late December of 1996, at Le Duc's direction, plaintiff reported for work at the NYNEX facility located at 500 Zerega Avenue, Bronx, New York (the "Zerega Avenue facility"). Plaintiff alleges that the foreman of the Zerega Avenue facility, defendant Michael Antonacci, informed plaintiff that she was to return to the Randall Avenue facility. (Complaint at p. 10, ¶ 95.) Upon informing Le Duc of this development, he advised her to return home and that he would find her another location to work.

*3 By letter dated January 2, 1997, Harrington informed plaintiff that if she did not return to work by January 9, 1997, she would be separated from the payroll. Plaintiff contends that Dr. Mitchell forwarded to NYNEX the requisite medical information for her to obtain sick leave. Plaintiff then spoke with Barbara Biggs-Glover, a chief steward for Local 1101, who advised her that Harrington had refused to accept plaintiff's sick leave status and further advised plaintiff to return work. Plaintiff avers that she returned to work at the Randall Avenue facility on or about January 15,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-07856-LAK-HBP    Document 5-4    Filed 09/26/2007    Page 14 of 18

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 1290596 (S.D.N.Y.), 165 L.R.R.M. (BNA) 2500, 141 Lab.Cas. P 10,818
**(Cite as: Not Reported in F.Supp.2d)**

1997, and that Harrington advised her to go home because she did not have the requisite medical approval to return to work. (Complaint at p. 12, ¶¶ 107-08.) Prior to that date, plaintiff had never been informed that she was required to submit medical approval to Harrington in order to return to work.

Plaintiff asserts that she was placed on absence without leave status on January 15, 1997. (Complaint at p. 12, ¶ 111.) On or about January of 1997, plaintiff received a letter from COBRASERV, notifying her that she had been terminated from NYNEX and that she needed to elect whether or not to continue her health benefits.

Plaintiff initiated this action on June 22, 1999, asserting twelve causes of action against NYNEX, for violations of the New York Human Rights Law (the "Human Rights Law") and the New York City Administrative Code (the "Administrative Code"). She alleges disability discrimination, gender discrimination, breach of the Agreement and outrageous and malicious treatment by NYNEX. Plaintiff's first eight causes of action allege disability discrimination and are summarized as follows: i) plaintiff suffered from a disability as defined by N.Y. Exec. Law § 292(21) and New York City Administrative Code § 8-102(16)(a), and NYNEX refused to grant her request for a leave of absence in violation of N.Y. Exec. Law § 296(1)(a) and New York City Administrative Code § 8-107(1)(a); ii) NYNEX failed to reasonably accommodate her by transferring plaintiff to a safer location in violation of N.Y. Exec. Law § 296(3)(a) and New York City Administrative Code § 8-107(1)(a); iii) NYNEX refused to accept medical documentation supporting her leave of absence and eventually terminated her in violation of N.Y. Exec. Law § 296(1)(a) and New York City Administrative Code § 8-107(1)(a); and iv) NYNEX wrongfully terminated plaintiff in retaliation for opposing unlawful discriminatory practices and in violation of N.Y. Exec. Law § 296(3)(c) and New York City Administrative Code § 8-107(7). The ninth and tenth causes of action allege gender discrimination, because NYNEX failed to take corrective action against Job, Garcia and Brignoni [FN1] in violation of N.Y. Exec. Law § 296(1)(a) and New York City Administrative Code § 8-107(1)(a). The eleventh cause of action alleges that NYNEX breached the Agreement because NYNEX failed to suspend her ten days prior to termination, failed to notify Local 1101 that she had been suspended or would be discharged and failed to notify her that she had, in fact, been terminated. Plaintiff's final cause of action alleges that NYNEX's treatment of plaintiff was outrageous, malicious and done with reckless indifference toward plaintiff, in violation of the New York City Administrative Code.

FN1. This is the only mention of an individual named Brignoni in plaintiff's complaint.

*4 On July 15, 1999, NYNEX removed the action to the United States District Court for the Southern District of New York, on the basis of the Court's original jurisdiction under Section 301 of the Labor Management Relations Act of 1947 (the "Labor Relations Act") and 28 U.S.C. §§ 1331, 1337. Plaintiff has moved to remand this action to the New York State Supreme Court, arguing that this Court lacks subject matter jurisdiction. In addition, defendant Le Duc has moved for judgment on the pleadings, dismissing the action as against him for failure to allege a legally sufficient claim of discrimination.

II. DISCUSSION

A. MOTION TO REMAND

*1. Preemption by Section 301 of the Labor Relations Act*

Plaintiff contends that all of the causes of action here are either state or local in nature and therefore, the Court lacks subject matter jurisdiction and should remand this action to state court. With regard to the eleventh cause of action, asserting breach of the Agreement, plaintiff argues that the Labor Relations Act is inapplicable here because the controversy is between an employer and a single employee and not between an employer and an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 1290596 (S.D.N.Y.), 165 L.R.R.M. (BNA) 2500, 141 Lab.Cas. P 10,818
(Cite as: Not Reported in F.Supp.2d)

entire labor organization. Plaintiff also argues that because she has not pled a violation of the Labor Relations Act in the complaint, it should not be controlling here.

A defendant may remove any civil action commenced in state court to the United States District Court where the federal court maintains original jurisdiction. 28 U.S.C. § 1441(1994). Under Section 301 of the Labor Relations Act ("Section 301"), the Court maintains jurisdiction over causes of action based on violations of collective bargaining agreements. *McKee v. Transco Prods., Inc.,* 874 F.2d 83, 85 (2d Cir.1989). Specifically, Section 301 provides that:

[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a) (1998). Therefore, Section 301 governs claims based upon rights created by a collective bargaining agreement and any claims " substantially dependent on analysis of a collective-bargaining agreement." ' *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425 (1987) (quoting *Int'l Brotherhood of Elec. Workers v. Hechler,* 481 U.S. 851, 859, n. 3, 107 S.Ct. 2161 (1987)); *see McKee,* 874 F.2d at 85. Although plaintiff has not pled this as a federal cause of action in the complaint, the "complete preemption" doctrine dictates that where "the preemptive force of a statute is so extraordinary [ ] it converts an ordinary state common-law complaint into one stating a federal claim." *Caterpillar,* 482 U.S. at 393 (citations and quotation marks omitted); *see also Wilk v. Intercontinental Hotel,* 1994 WL 25807 at * 2 (S.D.N.Y. Jan. 28, 1994) (holding that section 301 converts common law breach of contract claim into federal cause of action where contract is collective bargaining agreement). This "complete preemption" doctrine primarily applies to claims under Section 301. *See Caterpillar,* 482 U.S. at 393; *Hernandez v. Conriv Realty Assocs.,* 116 F.3d 35, 38 (2d Cir.1997). Plaintiff, therefore, cannot elude federal jurisdiction over this claim by fashioning it as a state law claim. Here, plaintiff has not alleged any violation of a specific state law. Instead, she merely eschews any reference to federal jurisdiction and frames the cause of action as common law breach of contract. Plaintiff has failed to even cite any case law in support of her position. Nevertheless, because the violation alleged requires the Court to review and interpret the Agreement in order to determine whether it has been breached, Section 301 governs. *See Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 413, 108 S.Ct. 1877 (1988); *Foy v. Pratt & Whitney Group,* 127 F.3d 229, 233 (2d Cir.1997).

*5 In addition, plaintiff's argument that this action is beyond the scope of Section 301 because it is a controversy between an individual employee and an employer, and not a controversy between an employer and an entire labor organization, is unavailing. In fact, Section 301 has been held to be controlling in this exact situation. *See Smith v. Evening News Assoc.,* 371 U.S. 195, 200-01, 83 S.Ct. 267 (1962); *Dougherty v. American Tel. and Tel. Co.,* 902 F.2d 201, 203 (2d Cir.1990); *McKee,* 874 F.2d at 85. Accordingly, because the Court maintains jurisdiction over this cause of action, removal was proper in this instance and plaintiff's motion to remand is denied.

*2. ERISA Preemption*

Although plaintiff makes no further arguments in support of the motion to remand, NYNEX further contends that the Court maintains jurisdiction over plaintiff's causes of action for denial of medical leave and benefits based on ERISA preemption. NYNEX removed this action on the basis of preemption by Section 301 and only now advances its ERISA preemption argument in opposing the motion to remand. (Notice of Removal, ¶¶ 3-7.) Furthermore, plaintiff has not even addressed this particular issue. Therefore, having determined that removal was proper on the basis of preemption Section 301, the Court declines to address whether ERISA preemption exists here, for purposes of determining the motion to remand.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-07856-LAK-HBP    Document 5-4    Filed 09/26/2007    Page 16 of 18

Not Reported in F.Supp.2d
Page 5
Not Reported in F.Supp.2d, 2000 WL 1290596 (S.D.N.Y.), 165 L.R.R.M. (BNA) 2500, 141 Lab.Cas. P 10,818
(Cite as: Not Reported in F.Supp.2d)

### B. DEFENDANT LE DUC'S MOTION FOR JUDGMENT ON THE PLEADINGS

#### 1. Le Duc as an "Employer"

Defendant Le Duc, a business agent of Local 1101, contends that this action should be dismissed as against him because he does not hold a management position with NYNEX. He argues, therefore, that he is not an employer as defined by either the Labor Relations Act or the Human Rights Law. Le Duc asserts that because plaintiff's causes of action allege discrimination by her employer, NYNEX, and individual NYNEX employees, he is not a proper defendant in this action.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(c), the Court applies the same standard as it would under a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994); *Heartland Sec. Corp. v. Gerstenblatt,* 2000 WL 303274 at *4 (S.D.N.Y. Mar. 22, 2000). Accordingly, the Court "accept[s] the allegations contained in the complaint as true, and draw[s] all reasonable inferences in favor of the non-movant; [and will] not dismiss the complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." ' *Sheppard,* 18 F.3d at 150 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)) (internal quotations omitted); *see Fitzgerald v. Field,* 1998 WL 152575 at *2 (S.D.N.Y. Apr. 1, 1998).

The Court notes that plaintiff undercuts her argument in support of the motion to remand, by now relying upon the Labor Relations Act to support her claims against Le Duc. Plaintiff cannot selectively apply the Labor Relations Act to suit her purposes; opting to renounce its application in hopes of remanding this action and then relying upon it to oppose the motion to dismiss. Plaintiff's causes of action all allege violations of the Human Rights Law or the Administrative Code, with the exception of the eleventh cause of action, which the Court has determined is governed by the Labor Relations Act. The Court now will address plaintiff's claim that the Labor Relations Act controls whether Le Duc is an employer, only with respect to that particular cause of action. The remaining claims are governed by the Human Relations Law.

*6 The Labor Relations Act defines an "employer" as "any person acting as an agent of an employer, directly or indirectly." 29 U.S.C.A. § 152(2) (1998) . However, the Labor Relations Act further provides that "anyone acting in the capacity of officer or agent of [a] labor organization" is not included in the definition of "employer." *Id.* Notwithstanding the clear language of the statute, plaintiff argues that Le Duc "so aligned himself with management as to become a part thereof." (Plaintiff's Memo in Opposition at p. 3.) Hence, she argues that Le Duc is an employer as defined by the Labor Relations Act and not exempt from liability.

It is undisputed that Le Duc is a business agent of plaintiff's union, Local 1101, and not an employee of NYNEX. Plaintiff only contends that Le Duc is a de facto employee of NYNEX by virtue of his conduct. She never claims that he was actually an employee of NYNEX and there is nothing in the record to indicate that an employee-employer relationship existed between Le Duc and NYNEX. This fact alone, takes Le Duc outside of the definition of an employer under the Labor Relations Act. However, because plaintiff is entitled to all reasonable inferences in her favor, the Court will extend its analysis beyond the precise language of the statute. In actions arising under the Labor Relations Act, an employer-employee relationship exists where the " 'purported employer controls or has the right to control both the result to be accomplished, and the manner and means by which the purported employee brings about the result." ' *Chaiken v. VW Pub. Corp.,* 119 F.3d 1018, 1034 (2d Cir.1997), *cert. denied,* 522 U.S. 1149 (1998) (quoting *Hilton Int'l Co. v. NLRB,* 690 F.2d 318, 320 (2d Cir.1982)); *see Momen v. United States of America,* 946 F.Supp. 196, 202 (N.D.N.Y.1996); *see also NLRB v. E.C. Atkins & Co.,* 331 U.S. 413-14, 67 S.Ct. 1265 (1947) (holding that employer-employee relationship is determined by power to set wages and hours, coupled with the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 1290596 (S.D.N.Y.), 165 L.R.R.M. (BNA) 2500, 141 Lab.Cas. P 10,818
**(Cite as: Not Reported in F.Supp.2d)**

financial burden of the wages and receipt of the benefits of the work, as well as the absolute power to hire and fire or the power to control all the activities of the worker); *District 2 Marine Eng'rs Beneficial Ass'n v. Grand Bassa Tankers, Inc.,* 1980 WL 2187 at *5 (E.D.N.Y. Nov. 4, 1980) (quoting *E.C. Atkins,* 331 U.S. at 413-14). Here, plaintiff has failed to allege that Le Duc possessed any indicia of control over the objective, manner and means of her employment. Plaintiff also fails to assert any facts to support her claim that Le Duc acted as a de facto member of NYNEX management. The only fact that could possibly lead to an inference that Le Duc maintained any control over plaintiff, is Le Duc's directing her to report to the Zerega Avenue facility. (Complaint at p. 10, ¶¶ 93-94.) However, this can only be construed as Le Duc assisting plaintiff, as he found her an alternative work location to the Randall Avenue facility, the situs of the threats underlying this action. On its face, this conduct alone fails to demonstrate that Le Duc possessed any control over the incidents of plaintiff's employment. Moreover, Le Duc's actions here rebut plaintiff's allegation that Le Duc acted in concert with management to discriminate against her. On the contrary, it serves to bolster Le Duc's position that he is a business agent of Local 1101 and not an employer. The remaining assertions concerning Le Duc's conduct do not implicate the issue of control over plaintiff's incidents of employment. Therefore, plaintiff's bald assertions that Le Duc is an employer under the Labor Relations Act are insufficient to survive a motion to dismiss. *Tarshis v. The Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

*7 Le Duc also does not qualify as an employer under the Human Rights Law. The determination of whether a party is an employer under the Human Rights Law, turns on whether the purported employer: i) has the power of selecting and engaging the employee; ii) makes payment of salary or wages to the employee; iii) has the power of dismissal over the employee; and iv) has the power to control the employee's conduct. *See Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 (2d Cir.1998) (citing *Goyette v. DCA Adver., Inc.,* 830 F.Supp. 737, 746 (S.D.N.Y.1993)); *Robbins v. Max Mara, U.S.A., Inc.,* 923 F.Supp. 460, 470 (S.D.N.Y.1996); *State Div. Of Human Rights v. GET Corp.,* 487 N.Y.S.2d 234, 235 (4th Dep't 1985). Of these factors, whether the purported employer " exercised control over the employee's conduct and the incidents of [her] employment," is the crucial inquiry. *Pampillonia,* 138 F.3d at 461; *see Robbins,* 923 F.Supp. at 470 (quoting *Alie v. NYNEX Corp.,* 158 F.R.D. 239, 246 (E.D.N.Y.1994)); *see also In re Villa Maria Inst. of Music v. Ross,* 442 N.Y.S.2d 972, 973 (1981) (holding that court looks to degree of control and direction reserved to employer, in determining existence of employment relationship). Again, plaintiff here has failed to even allege that Le Duc exerted any such control over her employment. Further, there is nothing in the complaint to suggest that Le Duc possessed control over the conditions of plaintiff's employment, much less exerted such control. As previously discussed, the only conduct demonstrating that Le Duc exercised any influence over plaintiff,[FN2] only bolsters Le Duc's position as a union representative. Despite drawing all reasonable inferences in plaintiff's favor, Le Duc is not an employer as defined by the Labor Relations Act or the Human Rights Law. Therefore, Le Duc cannot be held individually liable as an employer and those claims against him are dismissed.

FN2. Le Duc directed plaintiff to report to the Zerega Avenue facility, instead of the Randall Avenue facility. (Complaint at p. 10, ¶¶ 93-94.)

*2. Le Duc as an Aider and/or Abetter*

Plaintiff also alleges that Le Duc is individually liable for NYNEX's discriminatory conduct under the Human Rights Law. The Human Rights Law provides for individual liability where a person " aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing of any of the acts forbidden" by the Human Rights Law. N.Y. Exec. Law § 292(6). Thus, in order to hold Le Duc personally liable as an aider or abetter, plaintiff must establish that he "actually participate[d] in the conduct giving rise to discrimination claim." *Tomka v. Seiler,* 66 F.3d 1295, 1317 (2d Cir.1995); *see Sheppard v. Frontier Communications Servs., Inc.,* 92 F.Supp.2d 279,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 1290596 (S.D.N.Y.), 165 L.R.R.M. (BNA) 2500, 141 Lab.Cas. P 10,818
(Cite as: Not Reported in F.Supp.2d)

287 (S.D.N.Y.2000); *Oliver v. General Nutrition Ctr.,* 1999 WL 435208 at *3 (S.D.N.Y. Jun. 25, 1999). Plaintiff, however, has failed to assert any facts indicating that Le Duc did participate in the alleged discriminatory conduct of NYNEX and the other individual defendants. For instance, she contends that Le Duc: i) "stood idly by while job-related threats were improperly handled;" ii) failed to "assist her in attaining support for her medical leave of absence;" and iii) "remained silent in the face of these contractual breaches;" (Plaintiff's Memo in Opposition at p. 4.) Yet these allegations are wholly unsubstantiated by any facts in the complaint. The Court cannot extrapolate a set of reasonable inferences in favor of plaintiff without sufficient factual allegations from which to draw these inferences. *See Tarshis,* 211 F.3d at 35; *Leeds,* 85 F.3d at 53.

*8 The only examples of Le Duc's purported participation that plaintiff does cite are: i) his presence, "without comment or intervention," at the November 14, 1999 meeting (Plaintiff's Memo in Opposition at p. 3); ii) "ordering" [FN3] plaintiff to return to work at the Zerega Avenue facility; and iii) informing plaintiff that he would find her another work location (*id.* at p. 4). Without more, this conduct simply does not demonstrate that Le Duc participated in the alleged discriminatory conduct in any manner. *See Nodelman v. Gruner & Jahr USA Publ'g,* 2000 WL 502858 at *12 (S.D.N.Y. Apr. 26, 2000) (holding that employee may be individually liable under Human Rights Law if he "directly and purposefully participated in the charged discrimination"); *Cerrato v. Durham,* 941 F.Supp. 388, 396 (S.D.N.Y.1996) (holding that informing plaintiff that she had been terminated was not akin to "direct [and] purposeful participation" for which courts have held individuals liable as aiders and abettors). The Court finds it particularly telling that plaintiff claims that Le Duc "actively interfered with plaintiff's medical leave ... and refrained from relocating her to a location free of threats" (Plaintiff's Memo in Opposition at p. 4), when in fact, he did relocate her to an alternative work location as requested. This cannot be interpreted as the act of one who aided and abetted the alleged discriminatory conduct against plaintiff. Because the pleadings are devoid of sufficient evidence to support the claims against Le Duc as an aider or abetter, those claims are dismissed.

> FN3. Although plaintiff avers that Le Duc had "directed" her to report to the Zerega Avenue facility in the complaint, she rephrases it as Le Duc having "ordered" her to report there in the Memo in Opposition to the motion to dismiss.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is denied and defendant Le Duc's motion for judgment on the pleadings, dismissing the case as against him, is granted.

S.D.N.Y.,2000.
Monastra v. NYNEX Corp.
Not Reported in F.Supp.2d, 2000 WL 1290596 (S.D.N.Y.), 165 L.R.R.M. (BNA) 2500, 141 Lab.Cas. P 10,818

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.